REDMERSKI *v.* STATE OF INDIANA.

[No. 26,291. Filed January 8, 1935.]

*Peters & Leas,* for appellant.

*Philip Lutz, Jr.,* Attorney-General, *Walter E. Stanton,* Assistant Attorney-General, for appellee.

ROLL, J.—This is a criminal action by the State of Indiana against Burno Redmerski on an affidavit charging appellant with the crime of second-degree burglary as defined in section 2447, Burns Ann. St. 1926 (§10-701, Burns 1933, §2441, Baldwin's 1934). To the affidavit appellant entered a plea of not guilty and the case was submitted to the court without the intervention

of a jury. The finding of the court was that the defendant was guilty of the crime charged and judgment was entered accordingly. Appellant filed his motion for a new trial which was overruled and this is the only error assigned for a reversal of the judgment. The reasons assigned for a new trial are: (1) That the finding of the court is not sustained by sufficient evidence; (2) the finding of the court is contrary to law; (3) the finding is not sustained by sufficient evidence and is contrary to law. The other assigned reasons relate to the admission of certain testimony of one Alice Druhot over the objection and exceptions of appellant after the defendant had rested. The witness testified to a conversation she had with the defendant on November 12th at her house wherein appellant stated that it was the first case he had "pulled" with Maurice (meaning witness' husband) and that he had the case timed just right and that he had given him the easiest job, being outside, and that he had fallen down on it and that had he stayed with him and had done what was right he was going to let him into the trade and give him small jobs, safe cracking, then lead him into bigger jobs; and also testimony of this witness to the effect that the license plates on the Oakland car were secured at Angola.

The evidence concerning the commission of this crime was given mostly by Maurice Druhot and revealed in substance the following facts: That the witness first became acquainted with appellant about eight years before the alleged crime was committed; that witness previously had been working as a stationery salesman but had recently quit his job and had come to Fort Wayne and was living with his father and step-mother; that on the night of June 7, 1932, the witness went to appellant's home and told appellant that he "was not getting along very well and that the folks were ready

to kick him out because they did not have anything to eat;" and that appellant said to him that he had a place to get groceries and that witness said he would go along; that he and appellant and another person known to the witness as Stocco, waited in the basement of appellant's home until about 2:30 o'clock on June 8th and that they left in an Oakland coupe and drove over to Wayne street and parked the car on the south side of the street and about two houses west of the Rice grocery store; that he talked on the way over to the store how it was to be done, and it was said that the witness should watch the front and the other two go around and break in, and as soon as they broke in they call him. "He was to watch and if anyone came I was to warn them at once. It was around three o'clock in the morning when we arrived at the Rice grocery store. I took my position in front of the store and the other two (meaning Stocco and appellant) went to the rear of the store" and he stood out in front until they got the store open and appellant came around to the front of the store and told him to come on and he went with him to the rear of the store.

When he got there the rear door was open, the padlock had been broken, and "we loaded up with groceries and took them to the car." The groceries were taken out from the back room of the store and around the side and across the street to the car. He made four trips, appellant made one, and Stucco made three. "We took eggs, butter, potatoes, bacon, cigarettes, soap, cold meat, coffee and some pork." That appellant and Stucco had two wrecking bars, one large and one small one. "I saw that the padlock on the door was broken, that it was open; each of us had a small flashlight;" the back window was broken and that was the way they gained entrance to the building.

The witness then detailed the trip back to appellant's

home where they divided the groceries and also detailed the fact that he had been arrested for participating in this crime; that he had first entered a plea of·not guilty, and afterward changed his plea to guilty but judgment had not been entered on his plea at the time he testified in this case. There is other testimony in the record concerning the Oakland coupe which Maurice Druhot testified that was used on the nights of June 7th and 8th.

Appellant denied any knowledge whatsoever of the burglary of the Rice store; that the witness· Maurice Druhot, had not come to his home on the night of June 7th and he did not even see the witness on that night. There was some evidence concerning the general reputation of the witness, Maurice Druhot, as to truth and veracity to the effect that it was not good.

Appellant contends that the evidence was insufficient to show an entry of a building that was not a place of human habitation. The evidence of the owner of the store, Mr. Rice, was to the effect that he lived at 1618 East Wayne street, Fort Wayne, Indiana, and that the grocery store was located at 1721 East Wayne street; that the store was a one-story building and consisted of two rooms; that the entry on the night of the burglary was made through the back room and that the lock was pried off from the back door from the inside and on the window were marks where it had been pried open.

We have read the evidence carefully and have no hesitancy in saying that the evidence fully sustains every material element of the crime of second degree burglary. It is true the evidence is conflicting but this court will not weigh the evidence. This rule is too well established to require any citations of authority.

The second question presented by the record concerns

the testimony of Alice Druhot, wife of the state's chief witness, and relates to a conversation which she had heard between appellant and her husband, Maurice Druhot. This testimony was introduced after the state had rested and after appellant had rested his case. Appellant's objection is that the testimony was not proper rebuttal testimony and should have been introduced by the state in support of its case in chief. Even if the testimony would have been proper as evidence in chief, it is within the discretion of the trial court to admit such testimony after the defendant had rested its case. Such an error would not authorize or justify the reversal of the judgment. *Bryant* v. *State* (1886), 106 Ind. 549, 7 N. E. 217; *Hire* v. *State* (1896), 144 Ind. 359, 43 N. E. 312; *Harker* v. *State* (1847), 8 Blackford 540; *Kahlenbeck* v. *State* (1889), 119 Ind. 118, 21 N. E. 460.

Appellant has not shown that he suffered by reason of the irregular introduction of testimony and must make an affirmative showing that his substantial rights have been violated. No such showing appears in the record. We find no reversible error in the record.

Judgment affirmed.